AMERICAN FEDERATION OF STATE, COUNTY
AND MUNICIPAL EMPLOYEES, AFL-CIO,
COUNCIL 15, ET AL. *v.* CITY OF
NEW BRITAIN ET AL.
(13096)

HEALEY, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued December 9, 1987—decision released March 8, 1988

*Jackson T. King,* with whom, on the brief was *Frank J. Raccio,* for the appellants (plaintiffs).

*Joseph E. Skelly, Jr.,* for the appellee (named defendant).

466

COVELLO, J. This is an appeal from the denial of the plaintiff unions' application to vacate an award made by the Connecticut state board of mediation and arbitration.[1] The plaintiff unions and Louis Marino claim that the board's action should have been vacated because: (1) its decision was not timely rendered as required by General Statutes § 31-98;[2] (2) a de novo hearing was not held as required by General Statutes § 31-97 (a);[3]

[1] In response to the plaintiffs' application to vacate the award; General Statutes § 52-418; the named defendant filed a cross application to confirm the award pursuant to General Statutes § 52-417.

[2] General Statutes § 31-98 provides in part: "ORAL OR WRITTEN DECISION. REDUCTION OF ORAL DECISION TO WRITING. COMPENSATION OF MEMBERS. The panel, or its single member if sitting in accordance with section 31-93, may, in its discretion and with the consent of the parties, issue an oral decision immediately upon conclusion of the proceedings. If the decision is to be in writing, it shall be signed, within fifteen days, by a majority of the members of the panel or by the single member so sitting, and the decision shall state such details as will clearly show the nature of the decision and the points disposed of by the panel. Where the decision is in writing, one copy thereof shall be filed by the panel in the office of the town clerk in the town where the controversy arose and one copy shall be given to each of the parties to the controversy. The panel or single member which has rendered an oral decision immediately upon conclusion of the proceedings shall submit a written copy of the decision to each party within fifteen days from the issuance of such oral decision. In all cases where a decision is rendered orally from the bench, the secretary shall cause such oral decision to be transcribed, approved by the panel or single member as applicable and filed with the records of the board proceedings. . . ."

[3] "[General Statutes] Sec. 31-97. SUBMISSION OF GRIEVANCE OR DISPUTE; PROCEDURE. CLAIM OF NONARBITRABILITY OF ISSUE. (a) Whenever a grievance or dispute arises between an employer and his employees, the parties may submit the same directly to said board and notify said board or its clerk in writing and upon payment by each party of a filing fee of twenty-five dollars. Whenever a single public member of the board is chosen to arbitrate a grievance or dispute, as provided in section 31-93, the parties shall each be refunded the filing fee. Whenever such notification is given, a panel of said board, as directed by its chairman, shall proceed with as little delay as possible to the locality of such grievance or dispute and inquire into the causes thereof. The parties shall thereupon submit to said panel in writing, succinctly, clearly and in detail, their grievances and complaints and the causes thereof, and severally promise and agree to continue in business or at work without a strike or lockout until the decision of the panel is rendered; but such agreement shall not be binding unless such decision

(3) the arbitrators failed to abide by their interlocutory ruling of September 15, 1982; and (4) the arbitrators considered evidence not presented at the arbitration proceedings. We conclude that these claims are without merit and find no error.

Examination of the record discloses that on March 7, 1981, the New Britain board of police commissioners disciplined Louis Marino following hearings into allegations that municipal personnel examinations for the positions of police sergeant and police lieutenant had been fixed so that Marino would achieve high scores. The matter ultimately came before a panel of the state board of mediation and arbitration[4] which conducted eight hearings between September 29, 1982, and April 26, 1985. Since the parties could not agree as to the issue, the panel adopted the plaintiff's proposal, i.e., "Was Louis Marino disciplined for just cause? If not, what shall be the remedy?"

On December 11, 1985, the panel filed its arbitration award in which it concluded that "Louis Marino was disciplined for just cause." On January 2, 1986, the plaintiffs applied to the Superior Court for orders vacating the award and directing a rehearing. On June 20, 1986, the court, *Higgins, J.*, denied the plaintiffs' application and granted the named defendant's cross application to confirm the award.

is rendered within ten days after the completion of the investigation. The panel shall fully investigate and inquire into the matters in controversy, take testimony under oath in relation thereto and may administer oaths and issue subpoenas for the attendance of witnesses and for the production of books and papers."

[4] The labor contract between the plaintiffs and the defendant provided in relevant part that "[i]f a grievance is not settled . . . it may be submitted at the request of the Union to arbitration before the Connecticut State Board of Arbitration. . . . The arbitrators . . . shall hear and decide only one (1) grievance at a time. Their award shall be final and binding as provided by law. The Arbitrators shall be bound by and must comply with all the terms of this Agreement and shall have no power to add to, subtract from, or in any way, modify the provisions of this agreement."

The plaintiffs' first claim is that the court should have vacated the arbitration award because it was untimely filed, being 229 days after the last hearing and 133 days after the time allowed by the board for the submission of briefs.[5] The plaintiffs argue that it was, therefore, outside of the fifteen day filing period set forth in § 31-98; see footnote 2, supra; dealing with arbitration decisions.

We have previously concluded that the time limitation in this statute's predecessor[6] was directory and not mandatory. See *International Brotherhood of Teamsters* v. *Shapiro,* 138 Conn. 57, 67, 82 A.2d 345 (1951). We have also held that "[i]n the absence of a mandatory time limitation [in either the collective bargaining agreement or the submission to the arbitrators], an award of arbitrators may be made within a reasonable time." *Danbury Rubber Co.* v. *Local 402,* 145 Conn. 53, 59, 138 A.2d 783 (1958); see also *Middletown* v. *Police Local, No. 1361,* 187 Conn. 228, 231–32, 445 A.2d 322 (1982).

We do not have to reach those issues in the present case, however, because the plaintiffs' failure to raise the issue of timeliness prior to the issuance of the arbitration award operates as a waiver of their right to assert the lack of timeliness in the board's decision. The

---

[5] Section 31-91-42 of the Regulations of Connecticut State Agencies provides in relevant part: "If briefs or other documents are to be filed, the hearings shall be declared closed as of the final date set by the panel members for the filing of said summary briefs or documents with the board."

[6] "[General Statutes (1949 Sup.)] Sec. 608a. DECISION TO BE IN WRITING. After a matter has been fully heard, the * * * *panel,* by a majority of its members, shall, within * * * *fifteen* days, render a decision thereon in writing, signed by a majority of the members of the * * * *panel,* stating such details as will clearly show the nature of the decision and the points disposed of by said * * * *panel.* One copy of the decision shall be filed by the * * * *panel* in the office of the town clerk in the town where the controversy arose and one copy shall be given to each of the parties to the controversy. Effective June 24, 1949." (Emphasis in original.)

record discloses that the only challenge to timeliness is contained in the post-decision application to vacate the award.

"Courts favor arbitration as a means of settling differences . . . ." *Board of Education* v. *Bridgeport Education Assn.*, 173 Conn. 287, 290, 377 A.2d 323 (1977). "[I]ts autonomy requires a minimum of judicial intrusion." *Bic Pen Corporation* v. *Local No. 134*, 183 Conn. 579, 583, 440 A.2d 774 (1981). "In view of the slow pace of the proceedings up to the time the hearings were concluded, and *the failure of either party to object or claim prejudice because of it*, the court's conclusion was not erroneous as a matter of law." (Emphasis added.) *Danbury Rubber Co.* v. *Local 402*, supra, 59–60.

The plaintiffs next claim that the arbitration panel did not conduct a "de novo hearing" as required by § 31-97.[7] The specific objection raised is that the panel weighed and considered, among other submissions, the complete transcript of the hearings before the New Britain board of police commissioners. The plaintiffs argue that, by accepting the transcript, the panel failed to conduct an independent inquiry but rather carried out a record inquiry contrary to the statutory mandate. We do not agree.

The statutory mandate of § 31-97 is general in nature and calls for the panel to "fully investigate and inquire into the matters in controversy, take testimony . . . in relation thereto and . . . issue subpoenas . . . *for the production of books and papers.*" (Emphasis added.) See footnote 7, supra. Further, § 31-91-37 (a) and (b)

[7] General Statutes § 31-97 does not specifically mandate a "de novo hearing" but requires that "[t]he panel shall fully investigate and inquire into the matters in controversy, take testimony under oath in relation thereto and may administer oaths and issue subpoenas for the attendance of witnesses and for the production of books and papers." See footnote 3, supra.

of the Regulations of Connecticut State Agencies provide in relevant part that "[c]onformity to legal rules of evidence shall not be necessary. . . . *Documents, records and other pertinent data, when offered by either party, may be received in evidence by the panel.*" (Emphasis added.) Receipt of the challenged transcripts is thus clearly authorized by the agency regulations, which we may presume to be an accurate reflection of the legislative intent articulated in the statute's more general language. *Texaco Refining & Marketing Co.* v. *Commissioner,* 202 Conn. 583, 599–600, 522 A.2d 771 (1987). Within the confines of the limited review to be accorded an arbitration award,[8] and the presumption in favor of the award's validity, we are satisfied that the panel did not err in reviewing the transcripts of the hearings conducted before the board of police commissioners. *Hartford* v. *Local 308,* 171 Conn. 420, 431, 370 A.2d 996 (1976).

The plaintiffs next claim that the arbitration panel violated the terms of its own interlocutory ruling. As already explained, the plaintiffs objected to the introduction into evidence, at the arbitration hearing, of the transcript of the earlier proceedings before the board of police commissioners. They especially objected to those portions of the transcript that sought to implicate Marino in the fixing of the sergeant's examination, as the police commissioners had concluded that

---

[8] General Statutes § 52-418 (a) provides in relevant part: "[A]ny judge . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

as to this issue, "the evidence as to whether he had knowledge of the fixing is inconclusive."

In response to this objection, the arbitration panel issued an interlocutory ruling concluding that the testimony pertaining to Marino's knowledge "must be excised from the transcript." Despite this holding, the final arbitration award made reference to the testimony of Paul Manafort and Sebastian Bianca, both of whom had testified on this very issue. The plaintiffs claim that Marino's rights were thus prejudiced in violation of General Statutes § 52-418 (a) (3). See footnote 8, supra. We disagree.

Witnesses Manafort and Bianca testified on both the issue of examination fixing and the issue of Marino's knowledge of the fixing. By their very nature, the two questions were significantly interrelated. The arbitration award specifically stated that the panel had excised the challenged material and had made a distinction in evaluating the testimony, having accepted the former while excising the latter.[9] There is nothing in the record or the award that suggests otherwise.

Further, even if this allegation is assumed to be correct, the plaintiffs do not show how this fact prejudiced Marino. The arbitration award stated that Marino "received a promotion to which he was not entitled." It further stated: "This Panel, or at least a majority thereof, is also of the conviction that no one should benefit from a fixed examination, *whether he is aware of it or not.* Therefore, it seems the action taken by the Board [of police commissioners] . . . was most reasonable." (Emphasis added.) Thus, the fact that the

[9] The arbitration award stated: "The panel makes a distinction as to testimony regarding the fixing of the Sergeant's examination and testimony regarding the alleged knowledge of Officer Marino as to its being fixed. Since the Board of Police Commissioners found the evidence inconclusive as to the latter, such testimony must be excised from the transcript. Testimony referring directly to the fixing of the examination may be accepted."

examination was fixed emerges as the panel's paramount consideration, rather than the matter of Marino's knowledge.

" 'It is the established policy of the courts to regard awards with liberality. Every reasonable presumption and intendment will be made in favor of the award and of the arbitrators' acts and proceedings. Hence, the burden rests on the party attacking the award to produce evidence sufficient to invalidate or avoid it.' *Von Langendorff* v. *Riordan*, 147 Conn. 524, 527, 163 A.2d 100 [1960]." *Hartford* v. *Local 308*, supra, 431. The plaintiffs have not met that burden and the trial court did not err in concluding as it did.

Finally, the plaintiffs contend that the arbitration panel considered evidence not formally introduced at one of the hearings. Specifically, they object to the panel's consideration of a study commissioned by the city of New Britain and entitled "Report on Merit System Abuses and Remedial Action Taken" that was appended to the city's post-hearing brief.

We are again confronted with an issue that was never raised until the post-decision application to vacate the award. The board's regulations not only authorized the reopening of hearings to receive and consider new evidence,[10] but also provided a specific mechanism for formal, post-hearing communications with the panel.[11] Having used neither of these procedures, we conclude

---

[10] "[Regs., Conn. State Agencies] Section 31-91-43. REOPENING OF HEARINGS

"Prior to the rendering of an award, a party may move to reopen a hearing for good cause shown such as the emergence of new evidence, but a hearing shall be reopened contingent solely upon the discretion of the panel chairman."

[11] "[Regs., Conn. State Agencies] Section 31-91-49. COMMUNICATION WITH PANEL MEMBERS

"There shall be no communication concerning the pending case between the parties and the panel members after the chairman of the panel has declared the arbitration hearing or hearings closed. Any other oral or written

that there was a waiver of the right to challenge the arbitration panel's consideration of this material. *Danbury Rubber Co.* v. *Local 402,* supra, 59–60.

There is no error.

In this opinion the other justices concurred.

communications from the parties to the panel members shall be directed to the secretary of the board for transmittal to the respective panel members. It shall be the duty of the board to notify a party of any communication of the other party."