[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTIONS TO VACATE AND TO CONFIRM ARBITRATION AWARD
Applicant Morganti, Incorporated (Morganti), brings an application to vacate a certain arbitration award in one action and Connecticut Education Association (CEA) brings an application to confirm that same award in the other action.
FACTS
On or about February 10, 1989, CEA entered into a contract with Morganti to construct a seven-story office CT Page 3907 building on property owned by CEA in Hartford, Connecticut, for a "lump sum" contract price of $12,950,000. Morganti started to perform its obligations.
The contract had an arbitration clause, which in pertinent part is as follows:
 All claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise.
After Morganti started to work, it claimed that certain unforeseen subsurface conditions in the nature of unanticipated rock were encountered on the project. This claim led to a substantial dispute between the parties, which resulted in CEA's demand for arbitration.
On January 22, 1990, Morganti filed an answer. It also filed a counterclaim, claiming that CEA had breached the contract by failing to pay Morganti for the removal of the rock.
Before any arbitration hearings started CEA's claim was settled by a Settlement Agreement on July 17, 1990.
The original contract did not provide for liquidated damages. The Settlement Agreement provided for two kinds of liquidated damages. One such kind of damages was to result if Morganti failed to complete the top three floors of the project to such an extent that they were "permanently watertight" and ready for tenant fit-up work by July 17, 1990. Those damages were to be in the amount of $4,000 per day.
The other kind of liquidated damages the Settlement Agreement provided for were to result if Morganti failed substantially to complete the entire project by October 2, 1990. Those damages were to be $6,000 per day.
The Settlement Agreement also contained its own arbitration clause as follows:
 The Parties agree that any dispute arising out of the requirements and conditions of this agreement shall also be subject to arbitration, in accordance with the terms of CT Page 3908 the Contract. In the event that all of the terms and conditions hereof are fully met and accomplished by all of the parties, then the arbitration pending, which has been deferred by agreement of the parties, will be withdrawn.
It also provided:
 Should either party to this agreement find it necessary to institute or demand arbitration to enforce any provision herein, then the prevailing party in said action or arbitration shall be entitled to recover its reasonable legal fees, costs and expenses for arbitration and arbitrators (if any), and all other necessary and reasonable costs and expenses incurred to enforce this Agreement.
Morganti claimed that it substantially completed the top three floors of the project by July 17, 1990 in accordance with the Settlement Agreement. CEA's architect found that those were not ready until July 23, 1990, and on that basis, CEA assessed $24,000 in liquidated damages against Morganti (6 days x $4,000).
After signing the Settlement Agreement, Morganti claimed more unforeseen subsurface conditions which caused Morganti delay in the excavation of the project.
Morganti also claimed that as a result of the excavation delay it failed to achieve substantial completion of the project until March 1, 1991, or 150 days beyond the date set forth in the Settlement Agreement. Because of that failure CEA assessed only $894,000 in liquidated damages against Morganti, (149 days x $6,000).
CEA withheld a total of $918,000 ($24,000 + $894,000) from the progress payments due Morganti during the course of construction.
On September 4, 1990, Morganti filed an amended counter-claim in the arbitration seeking a determination that it had completed the top three floors of the project in full accordance with the Settlement Agreement and was, therefore, not liable for liquidated damages. This counterclaim was followed by a second amended counterclaim filed on December 7, 1990 setting forth that:
 [Morganti] seeks a determination that: (1) It delivered the fifth, sixth, and seventh floors of the building in question to the owner CT Page 3909 in full accordance with and satisfaction of the terms of the Settlement Agreement executed by the parties on July 17, 1990 and is not, therefore, liable for liquidated damages as provided in the Settlement Agreement; and (2) it is not liable for liquidated damages as provided in the Settlement Agreement because it did not [sic] achieve substantial completion on the building on October 2, 1990.
On December 14, 1990, the parties began the arbitration hearings. On May 2, 1991 Morganti added to its counterclaim a request for additional relief as follows:
 An equitable adjustment to the contract sum to compensate it for damages resulting from the unforeseen subsurface conditions encountered after July 17, 1990, including, but not limited to, extra labor, materials, and equipment and delay damages.
The three arbitrators were, Attorney Mark Shipman (Shipman); Charles A. Ahlstrom, an architect (Ahlstrom); and William M. Ivler, a contractor and Attorney (Ivler). During the course of the hearings Ivler became ill and the parties agreed to go forward with only two arbitrators. The hearings ended July 11, 1991, at which time the arbitrators ordered post-hearings briefs to be filed by August 28, 1991, and reply briefs by September 10, 1991. The hearings then would be deemed closed under Rule 35 of the Construction Industry Arbitration Rules of the AAA (AAA Rules), and the award would be due 30 days thereafter. The parties submitted their post-hearings briefs and reply briefs in accordance with the orders and awaited the decision of the panel.
On October 3, 1991, Robert M. Barrack (Barrack), one of Morganti's attorneys, received a telephone call from John C. Yavis, Jr. (Yavis), co-counsel for CEA, who explained that he had the arbitrators on the telephone line, and that they wanted to ask him (Yavis) a question. Yavis then put the arbitrators on his speaker phone so that Barrack could hear the conversation. Shipman told Barrack that the arbitrators were in executive session in Shipman's office and they wanted a clarification from Yavis regarding an item in Appendix B of CEA's post-hearings brief, but wanted to make sure Morganti's counsel was listening to the conversation.
Appendix B to CEA's post-hearings brief is entitled "Capital Place Project Costs Summary", and contained a line item entitled "carrying costs". That summary showed that CT Page 3910 $709,000 was allocated to the line item for carrying costs, out of the $21.5 million project budget and that as of July 31, 1991 none of these "carrying costs" had been expended. However, the summary did indicate that the full budgeted amount of $709,000 would eventually be expended and comprise part of the total project cost prior to final completion.
Shipman indicated that the arbitrators did not understand what the carrying costs were and why none of them had been as yet expended. Yavis explained that the project costs summary was prepared by his client, and that although he was not sure what the carrying costs entailed, he believed the item referred to costs expected to be incurred up to one year after substantial completion. Shipman then thanked Yavis for his explanation, and the phone call was terminated. Mr. Barrack never commented or objected before the call ended.
After that phone call, upon request from the arbitrators, the parties agreed to two extensions of time so that the award became due October 24 1991. On October 23, 1991, parties received the document containing the arbitrators' award, which is as follows.
[Caption omitted]
 "WE, THE UNDERSIGNED ARBITRATORS, having been designated in accordance with the arbitration agreement entered into by the above-named parties, and dated February 10. 1989 and having been duly sworn and having duly heard the proofs and allegations of the parties Award as follows:
 On the claim of CT Education Association, Inc. the sum of $690,000.00 to be paid by Morganti Incorporated. The counterclaim is denied.
 The administrative fees and expenses of the American Arbitration Association totaling $9,985.00 shall be borne equally by the parties. The Association notes that the compensation has been paid in full.
 This award is in full and final settlement of any and all claims submitted to this Arbitration.
s/s Mark Shipman Dated 10/22/91
s/s Charles Ahlstrom Dated 10/18/91
The award was signed by Ahlstrom on October 18, 1991, CT Page 3911 and by Shipman on October 22, 1991. Below the arbitrators' signatures there appears a footnote or addendum to the award, which was typed in a different typeface from the body of the award and which stated:
 Note: All other sums still due and outstanding on Morganti's final payment requisition shall be paid in full by CT Education Association, Inc. to Morganti, Inc.
The "Note" was initialed by Ahlstrom, but not by Shipman.
On November 20, 1991 Morganti moved to vacate the award pursuant to Conn. Gen. Stat. 52-418 on the following grounds:
"a. the arbitrators' award did not conform to the parties' submission, because the arbitrators made an award on a claim that was not before them;
b. the arbitrators' award was ambiguous, indefinite and contradictory;
c. the arbitrators failed and refused to enforce the clear language of the contract and agreement between the parties regarding interest and attorney's fees and costs of arbitration;
d. the arbitrators subsequently made direct contact with the parties, and received "evidence" from one party long after the hearings were closed."
Now, Morganti makes the following claims for vacating the award:
"(a) The Award does not conform with the submission, because CEA had no claim before the arbitrators and the arbitration proceeded solely on Morganti's counterclaim;
(b) the Award is vague, ambiguous, indefinite and contradictory and was not signed by both arbitrators;
(c) the Award violates the agreement of the parties by not granting interest, costs, and attorneys fees to Morganti;
(d) the Award violates public policy by imposing an unlawful penalty; and
(e) the arbitrators engaged in misconduct prejudicial CT Page 3912 to Morganti. LAW
I. BURDEN
Morganti has the burden of proving the invalidity of the award based on at least one of its claims. Watertown Police Union Local 541 v. Watertown, 210 Conn. 333, 338-39
(1989); O G/O'Connell Joint Venture v. Chase Family Limited Partnership No. 3, 203 Conn. 133, 146 (1987).
Morganti filed its motion to vacate under C.G.S. 52-418
and within the time limit of C.G.S. 52-420 (b).
II. CONFORMANCE TO THE SUBMISSION
The award must conform to the submission. Naugatuck v. AFSCME, 190 Conn. 323, 325-326. We know what the award is. In our case the submission might be said to come in four parts. The first part was the contract of February 10, 1989.
The second part is the combination of CEA's demand for arbitration dated January 22, 1990 with Morganti's answer and counterclaim dated January 29, 1992. The third part is the Settlement Agreement of July 17, 1990. The fourth part is Morganti's three amended counterclaims. When all those submission materials are read together the issues submitted for arbitration were:
(1) Was Morganti liable for any liquidated damages;
(2) if it were so liable to what extent;
(3) how much, if anything, would be awarded Morganti as an adjustment "to compensate it for damages resulting from certain unforeseen subsurface conditions", and
(4) who would recover how much in costs, which includes interest and attorneys fees?
The Award said:
(1) Morganti was liable for liquidated damages;
(2) the extent of its liability was $890,000;
(3) Morganti's claim in regard to the subsurface conditions was denied, and
(4) the parties were to bear equally all administrative CT Page 3913 fees and expenses of the American Arbitration Association and the compensation for the arbitrators. The award did not give attorneys' fees to either party.
There is a "Note" at the bottom of the award, below the two signatures. The Note is clearly typed with different typefaces and in darkened ink. It is neither signed nor even initialed by the arbitrators. Of course, it is initialed by one arbitrator but the court finds that meaningless. In addition the Note refers to sums due on Morganti's final payment requisition. That was not part of the submission. Therefore, this court finds the note was not intended to be part of the award by both arbitrators, and thus they did not make an award on a matter not submitted. Here, too, the burden is on Morganti to prove that the award does not conform to the submission. Trumbull v. Trumbull Police Local 1745,1 Conn. App. 207, 212.
III. AMBIGUITY
Although courts favor arbitration, AFSCME v. New Britain206 Conn. 465, 469, they will not enforce an award they cannot understand. Brown v. Wheeler 17 Conn. 345, 351. It need not be exquisitely precise but need only be "a complete and reasonably definitive award." Local 63, Textile Workers Union v. Cheney Bros., 141 Conn. 606, 616. Of course "[e]very reasonable presumption and intendment will be made in favor of the award and of the arbitrators' acts and proceedings." AFSCME v. New Britain, supra 472.
The statute requires the award to be "mutual, final and definite." C.G.S. 52-418 (c). This award is clearly mutual and final. The award is definite as to Morganti's responsibility for liquidated damages. It is definite in regard to the "extent" of those damages — $890,000. It is definite in regard to the amount and allocation of responsibility for costs.
It is definite that neither attorneys' fees nor interest were awarded. Although the question of attorneys' fees and interest was submitted, that submission "did not require the arbitrators to make any specific reference to that question." Ramos Iron Works v. Franklin Construction Co. 174 Conn. 583,589. The award specifically said it "is in full and final settlement of any and all claims submitted to this Arbitration." Id. 589.
The award need not find specific facts. Von Langendorff v. Riordan 147 Conn. 524 527-528, or make specific findings. Costello Construction Corporation v. Teamsters Local 559, 167 Conn. 315, CT Page 3914 320-321. We are not required to search for ambiguity.
IV. ATTORNEYS' FEES AND INTEREST
From the facts it is clear that the arbitrators might have found Morganti not to be the "prevailing party". They may have found two prevailing parties or no prevailing party.
V. PUBLIC POLICY
Morganti claims that the award for liquidated damages should not be permitted to be confirmed by a judgment that may then be enforced by the power of the state because agreements for such damages are against public policy.
A contract provision for unreasonable liquidated damages would normally be unenforceable on grounds of public policy as a penalty. Hanson Development Co. v. East Great Plains Shopping Center, Inc. 195 Conn. 60, 64-65.
In our courts for a party to prevail on a claim of liquidated damages three conditions must be met. First, the anticipated damages are uncertain in amount or would be difficult to prove. Second, the parties must have intended that the damages be liquidated. Third, that the amount agreed upon is reasonable in that it is not out of proportion to the amount of damages which, as the parties looked forward, they could reasonably anticipate as possible. Berger v. Shanahan142 Conn. 726.
Although CEA appears to have sustained its burden of proof in regard to each of these three conditions the court will examine each. First on a contract for a seven-story building at a cost of almost $13,000,000, that damages for failure to meet certain completion dates might be difficult to prove is obvious.
Second, the Settlement Agreement makes plain that both parties intended liquidated damages. But we cannot stop there. This condition is only met when "the parties, in good faith," agreed that the sum or sums would be expected to represent the damages which would ensue from a breach. Hanson Development Co. v. East Great Plains Shopping Center, Inc. supra, 65. CEA had the burden before the arbitrators to prove that the sums agreed to by the parties were in good faith intended as their best estimate of the possible future damages. It obviously convinced the arbitrators on that point.
Third, the amount does not appear from this seat to be CT Page 3915 unreasonable when we know it is an estimate of damage which would be very difficult to determine. Morganti did not convince the arbitrators otherwise.
Morganti cites the case of Norwalk Door Closer Co., Inc. v. Eagle Lock Screw Co. 153 Conn. 681 for the proposition that if after the fact it turns out there were no actual damages a liquidated damage clause may not be enforced by a court. However, as that court said, "This is not to say that any burden is placed on a plaintiff to prove actual damage in order to recover under a valid contract for liquidated damages." Id. 688.
This court is at two removes from a finding that there were no actual damages. First, the concept must have been presented to the arbitrators and they must have concluded either that CEA sustained its burden of proof or possibly under Norwalk Door Closer Co. v. Eagle Lock Screw Co. supra 688-689 they might have considered "that equitable principles will be invoked to deny recovery when the facts make it apparent that no damage has been suffered" when in fact the arbitrators thought some had been suffered.
Secondly, this court has this matter under C.G.S.52-418. It is not a trial de novo. The court does not review and balance all the evidence to decide whether there has been a violation of public policy. This court only looks to see if the arbitrators had any evidence that would allow them to conclude that no such violation was proven.
Finally, in Exhibits 4, 5, 6 and 7 given to this court, Morganti never challenged in its written claims to the arbitrators the right of CEA to get liquidated damages on a public policy basis. By May 1991 such a claim was presented. That was not an early stage of the arbitration. New Haven v. AFSCME Council 15, Local 530, 208 Conn. 411 417 n. 6.
A court will overturn an arbitration award because of a claim of a violation of public policy only in situations where the contract would violate some explicit, well-defined, and dominant public interest. It will not so act from general considerations of public interest. Watertown Public Union Local 541 v. Watertown 216 Conn. 333, 340. This court cannot find that the public interest in not enforcing liquidated damage claims between private parties of apparent equal strength who have entered into a reasonable agreement is a dominant public policy. Cf. International Brotherhood of Police Officers v. Windsor 40 Conn. Sup. 145, (award set aside that upheld disciplining of police officer for refusing to falsify warrant). CT Page 3916
Enforcement of this award is not unlawful. Board of Trustees v. Federation of Technical College Teachers 179 Conn. 184,195.
The court has before it very little of the evidence which was before the arbitration. They apparently had a typical smorgasbord of testimony, charts, reports, etc. This court has only a few delicacies and they are mostly from the loser's plate. In order to prove that there were no damages proven all that was before the arbitrators would have to be before this court.
From what this court has it can easily conclude that the arbitrators saw actual damage to CEA.
Morganti seems to take the position that its claim is for "withheld" monies. Plaintiff's memorandum, December 23, 1991, p. 30. The submission does not speak of "withheld" monies. However, it does not matter because the award clearly gave CEA the $690,000. It did so without in any way designating the source. Awards need not do that.
Before this court the parties admit that CEA holds certain funds. The award in effect gives CEA a right to keep only part of those funds. Without any interpretation the balance is to go to Morganti because the award "is in full and final settlement of any and all claims submitted."
VI. ARBITRATORS' MISCONDUCT
The court finds no misconduct on the part of the arbitrators.
The court finds no possible detriment to Morganti from any actions of the arbitrators which Morganti claims are "misconduct."
Motion to vacate is denied.
Motion to confirm is granted.
N. O'NEILL, JUDGE