[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff applies to vacate and defendant to confirm an arbitration award.
FACTS
CT Page 12812
The grievance, which was the subject of arbitration hearings before the State of Connecticut Board of Mediation and Arbitration ("Board"), was filed by the defendant on behalf of Patrolman Michael Guglietta (Grievant) regarding his termination of employment with the South Windsor Police Department.
The Collective Bargaining Agreement ("Agreement") between the parties provides for a "Grievance Procedure", which is found in Article XVI. Section 16.5 sets out the steps of the procedure. There are four (4) steps to the procedure, with the fourth giving the defendant the right to submit grievances to the Board. The procedure found in the Agreement was negotiated by the parties. The result is that it was agreed to submit disputes addressed in the Agreement to the Board.
A grievance was filed December 1990 with the Board. After many delays, on September 12, 1991 the parties presented their respective positions and a hearing before the Board began.
The parties appeared at the September 12, 1991 hearing and the Town proposed the issue to be, "Did the Town of South Windsor violate Article 16 of 1988-1992 Collective Bargaining Agreement when it discharged Michael Guglietta on or about December 15, 1990?" The Union proposed, "Was the grievant, Michael Guglietta, discharged for just cause? If not, what should the remedy be?" The Arbitration panel decided to accept the proposed issues as exhibits, and review the proposals during deliberations, and frame the issue after their review. Neither party objected to that proposed procedure.
Hearings on the matter concluded on September 15, 1992.
Final briefs were received on January 28, 1993.
The panel framed the issue as, "Was the grievant terminated by the Town for just cause in accordance with the relevant provisions of the Collective Bargaining Agreement and any Departmental Rules and Regulations and Policies? If not, what shall the remedy be?" CT Page 12813
The full panel did not agree as to the award itself but was unanimous in the following findings:
July 28, 1990 — Grievant violated 2.3.36 of the Duty Manual by divulging information regarding "R.J." for the purpose of "burning" him. This violation occurred because the Grievant acknowledged himself to be a police officer and that position asserted the truth of the information and divulged "R.J."'s identity, without Departmental approval. Section 2.2 outlines conflicts of interest "in fact or in appearance". — Grievant did not violate 2.3.8 of the Duty Manual — use of intoxicants. Prohibition is not an absolute one as it reads ". . . or drinking it so as to render himself unfit to report for scheduled duty".
July 30, 1990 — Grievant violated 2.3.36 and 2.2.7 of the Duty Manual by again divulging and disseminating information concerning "R.J." He did not intentionally interfere in an ongoing police investigation because he did not know about Operation Trifecta.
August 2, 1990 — Grievant's potential violations attributed to this date not substantiated.
August 10, 1990 — Grievant violated Duty Manual 2.3.36 and 2.2.7. See above explanation.
October 10, 1990 — Grievant did not violate Duty Manual 2.2.6 — use of official position. — Grievant violated Duty Manual 2.3.10 since visit not performed in discharge of official duty. The evidence did not provide a clear picture of what occurred. The Town's witness changed his testimony and he had worked as a police officer in Stafford Springs with CT Page 12814 Officer Thompson. The Grievant's explanation of the reason for his visit was not entirely credible. Fred Lee, at this point, was under arrest for drugs.
Operations Directive D-1-e and D-1-i — Not substantiated. The Grievant's actions toward this end were acknowledged by the testimony concerning his efforts to have "R.J." arrested. Although the Town claims that he did not follow through the chain of command in some of his various efforts, the evidence is clear that the determination of the appropriate chain of command was frustrated due to the multi-Town collaboration effort of Operation Trifecta which operated under a separate set of rules and policies.
Duty Manual 2.3.2 — Conduct Unbecoming an Officer — admitted by Grievant concerning his frequenting Town bars, etc.
Duty Manual 2.3.3 — Neglect of Duty — not substantiated.
On April 20, 1994 the majority of the panel issued the following Award:
The grievance is upheld in part and denied in part.
The Town shall reinstate the Grievant without prejudice or loss of seniority and he shall be made whole for any loss of wages less the 150 days of suspension without pay imposed herein. See DISCUSSION AND ANALYSIS, regarding reduction of wages, etc., from backpay.
 THE CONNECTICUT STATE BOARD OF MEDIATION AND ARBITRATION
BY:
 ___________________________ Susan E. Halperin CT Page 12815 Attorney-at-Law Panel Chair Public Member
 ___________________________ (DISSENTING) Harold LeMay (Regarding Management Member payment of any backpay)
 ___________________________ Michael Vernoval, Sr. Labor Member
 LAW
I Public Policy
The panel found that grievant did not know that "R.J." was an informant.
The panel did find that the grievant's "actions seemed to violate the Dissemination and Divulging sections of the duty manual."
Our C.G.S. §§ 54-142a et seq., and §§ 54-142g et seq. establish a strong public policy against the disclosure of both conviction and non-conviction information held by municipal police departments. That policy is explicit, well-defined, dominant and found by reference to laws, not "general considerations", Watertown Police Union Local 541v. Watertown, 210 Conn. 333, 339-340.
II Exoneration
In Article XVII 21 § 17.3 the Agreement permits reinstatement if the employee "is subsequently exonerated". Grievant was never exonerated according to the panel's findings. As a result the Agreement does not allow "that he be made whole."
III Framing of Submission
Although the panel used the peculiar method of framing the submission after hearing the matter this was the procedure the parties agreed to before the hearing began. CT Page 12816
IV Lawful Employee Organization
Plaintiff alleges that defendant is not an employee organization under C.G.S. § 7-407(b). The plaintiff has not sustained its burden of proof in regard to that allegation.
V Timeliness of Award
Plaintiff claims that the award was not rendered "within thirty days from the date the hearing or hearings are completed, or, if the parties are to submit additional material after the hearing or hearings, thirty days from the date fixed by the . . . arbitrators . . . for the receipt of the material as is required by C.G.S. § 52-416(a)."
The defendant cites AFSCME v. New Britain, 206 Conn. 465
as to a plaintiff's waiver of this provision. First, it would appear that that arbitration dealt with C.G.S. § 31-98 whereas ours dealt with § 52-408 et seq. In addition, in that case the court found an oral extension of the time limit for rendering the award. id. 347. There is no such extension in the instant case. There was no waiver.
The award was not rendered within the time permitted by C.G.S. § 52-416(a) and therefore "shall have no legal effect."
The award was not rendered within a reasonable time.
VI Ability to Comply
The court makes no finding as to what if any effect the certification program set out in C.G.S. §§ 7-294a and7-294d would have on the award if it were to be confirmed[.]
The application to vacate is granted.
The application to confirm is denied.
N. O'Neill, J. CT Page 12817