BOARD OF EDUCATION OF THE CITY
OF HARTFORD *v.* LOCAL 566,
COUNCIL 4, AFSCME
(15154)

Foti, Spear and Hennessy, Js.

---

Argued September 19—officially released November 5, 1996

*Ann F. Bird,* assistant corporation counsel, with whom, on the brief, was *Pedro Segarra,* former corporation counsel, for the appellant (plaintiff).

*Jason W. Cohen,* with whom was *J. William Gagne, Jr.,* for the appellee (defendant).

SPEAR, J. The plaintiff appeals from the judgment of the trial court confirming an arbitration award that ordered the plaintiff to reinstate an employee (grievant) whom the plaintiff had demoted from his position as a warehouse supervisor because of the grievant's federal conviction for embezzling union funds.[1] The plaintiff

---

[1] The defendant was convicted of a violation of 18 U.S.C. § 1344. That section provides: "Whoever knowingly executes, or attempts to execute, a scheme or artifice—

"(1) to defraud a financial institution; or

"(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both."

claims that the award should be vacated because (1) the arbitrators' preclusion of evidence of the grievant's conviction was based on an interpretation of the parties' collective bargaining agreement that was so irrational that it constituted misconduct, and (2) the award violates public policy because it requires the plaintiff to reinstate a person who has been convicted of fraud to a position in which he would have custody and control of property purchased with public funds. We agree that the award violates public policy and, accordingly, reverse the judgment.

The relevant facts are as follows. The plaintiff employed the grievant as a warehouse supervisor and, during his time of employment, the grievant also served as secretary-treasurer of the defendant union. While serving as secretary-treasurer, he received a number of blank checks that were erroneously printed with only one signature line. Union rules require the signatures of two union officers on all checks. The grievant secretly retained the checks, despite instructions from the union president to return them. From July 30, 1985, through April 30, 1988, the grievant wrongfully obtained union funds in the amount of $23,852 by drawing and negotiating 108 checks, each payable either to himself or to cash. He concealed the thefts by making false entries in the books and ledgers of the union.

The grievant was arrested and, after a guilty plea, convicted of fraud in the federal District Court for the District of Connecticut on July 23, 1990. Because of the conviction, the plaintiff demoted the grievant from warehouse supervisor to maintenance and custodial helper on September 24, 1990. On October 11, 1990, the grievant filed a grievance, claiming that there was no just cause for the demotion. The defendant and the plaintiff ultimately proceeded to arbitration before the state board of mediation and arbitration (board) on March 25, 1994.

During the arbitration proceedings, the plaintiff sought to introduce evidence of the grievant's fraud conviction, but the board refused to allow the evidence on the basis on its interpretation of article XII, § 12.1 (B) of the collective bargaining agreement. That section provides that "[r]ecords of disciplinary action shall be removed from the employee's file after two (2) years." The board found that there was no just cause for the demotion and ordered the plaintiff to reinstate the grievant to the position of warehouse supervisor and to reimburse him for all lost wages and benefits.

The plaintiff and the defendant filed respective applications to vacate and to confirm the award. The trial court granted the defendant's application to confirm the award and denied the plaintiff's application to vacate. This appeal followed.

I

The plaintiff first asserts that the board's exclusion of the grievant's conviction record was so egregiously improper that it was tantamount to rewriting the subject clause. It contends that the interpretation constitutes misconduct because it violates the arbitrators' obligation to base the award on the parties' contract. In making this claim, the plaintiff acknowledges the general principle that "when arbitration is consensual, rather than statutorily imposed, judicial review is limited in scope. . . . If the parties mutually agree to submit their dispute to arbitration, the resulting award is not reviewable for errors of law or fact. . . . Judicial review of unrestricted submissions is limited to a comparison between the submission and the award to see whether, in accordance with the powers conferred upon the arbitrators, their award conforms to the submission." (Internal quotation marks omitted.) *Hartford* v. *Board of Mediation & Arbitration*, 211 Conn. 7, 14, 557 A.2d 1236 (1989).

There is no question that the award conforms to the submission. The plaintiff claims, however, that this case falls under an exception to the general rule that arbitration awards are not reviewable for errors of law. "Judicial approval of arbitration decisions that so egregiously depart from established law that they border on the irrational would undermine society's confidence in the legitimacy of the arbitration process. . . . Furthermore, although the discretion conferred on the arbitrator by the contracting parties is exceedingly broad, modern contract principles of good faith and fair dealing recognize that even contractual discretion must be exercised for purposes reasonably within the contemplation of the contracting parties." *Saturn Construction Co.* v. *Premier Roofing Co.*, 238 Conn. 293, 305, 680 A.2d 1284 (1996), citing *Garrity* v. *McCaskey*, 223 Conn. 1, 10–11, 612 A.2d 742 (1992). "[H]is award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award. . . ." (Citations omitted; internal quotation marks omitted.) *Board of Education* v. *AFSCME*, 195 Conn. 266, 273, 487 A.2d 553 (1985); *Hudson Wire Co.* v. *Winsted Brass Workers Union*, 150 Conn. 546, 553, 191 A.2d 557 (1963).

The plaintiff makes a very persuasive argument[2] that the board's ruling on the proffered evidence was errone-

[2] The plaintiff asserts that the plain language of the clause requires the removal of records created *by the plaintiff* of disciplinary action taken *by the plaintiff* so as to preclude the use of such records in future disciplinary proceedings, performance evaluation and the like. The parties never intended the clause to include records made by some other entity, not under the control of the plaintiff, reflecting action taken by that other entity. Furthermore, the record at issue here was created *before* the plaintiff disciplined the grievant. Further, the parties could not have intended that the plaintiff was responsible for ensuring a hearing before the board within two years of disciplining an employee at the risk of not being able to establish the very conduct that precipitated the grievance process.

ous. Even if the ruling was improper, we are not persuaded that it resulted in an award that falls completely outside the scope of the agreement and the contemplation of the parties.

The board's interpretation of the subject clause, although severely strained, has some basis in the language of the contract.[3] The board could have concluded that the judgment of conviction was a "record" of a form of "discipline" and that such record was in the grievant's file. Because the 1990 record was offered in a 1994 hearing, the board could have further concluded that the words "removed from the employee's file after two (2) years" precluded using any such record against an employee if the record was more than two years old. Although the board's interpretation comes close to the flash point at which legal error becomes so egregious as to depart from the essence of the parties' contract, we are satisfied that that point was not reached in this case. We conclude that this ground of vacatur was properly rejected by the trial court.

## II

The plaintiff also claims that enforcement of the award would violate public policy by requiring the plaintiff to reinstate the grievant to a job with responsibility for publicly owned property even though he has been convicted of abusing a position of trust by fraudulently diverting union funds to his own use. We agree.

"It is a well accepted proposition that the courts favor arbitration. . . . An award, however, can be vacated where its enforcement would violate some explicit public policy that is well defined and dominant, and is . . . ascertained by reference to the laws and legal prece-

---

[3] It is not clear whether the board based its ruling on the time span between the crime and the demotion or the time span between the conviction and the hearing at which the record was proffered. Each period of time exceeds two years.

dents and not from general considerations of supposed public interests. . . . A vacatur on public policy grounds is premised on the notion that the parties cannot expect an award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them." (Citations omitted; internal quotation marks omitted.) *South Windsor* v. *South Windsor Police Union*, 41 Conn. App. 649, 654, 677 A.2d 464 (1996), citing *Watertown Police Union Local 541* v. *Watertown*, 210 Conn. 333, 340, 555 A.2d 406 (1989).

Our criminal statutes evidence a clear public policy against the theft and fraud engaged in by the grievant.[4] In *State* v. *Council 4, AFSCME*, 27 Conn. App. 635, 641, 608 A.2d 718 (1992), where the state fired an employee who stole state funds while on the job, we stated that "[t]his state's compelling public policy of not tolerating the knowing misappropriation of state funds by state officials or employees cannot be disputed. General Statutes § 53a-119 (6), which explicitly proscribes such conduct, represents an unequivocal legislative articulation of this policy. The public policy of discouraging fraud generally is firmly rooted in our common law as well. . . ." (Citations omitted.) Id. In that case, we affirmed the trial court's vacatur of the arbitration award that ordered the reinstatement of the employee.

[4] General Statutes § 53a-119 provides in pertinent part: "Larceny defined. A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to:

"(1) Embezzlement. A person commits embezzlement when he wrongfully appropriates to himself or to another property of another in his care or custody. . . ."

General Statutes § 53a-122 provides in pertinent part: "Larceny in the first degree: Class B felony. (a) A person is guilty of larceny in the first degree when he commits larceny as defined in section 53a-119 and . . . (2) the value of the property . . . exceeds ten thousand dollars . . . ."

*Id.* In *Schmidt* v. *Yardney Electric Corp.*, 4 Conn. App. 69, 74, 492 A.2d 512 (1985),[5] where we considered a discharged employee's claim that he was fired in retaliation for disclosing a fraudulent insurance claim made by his employer, we noted that "[t]he important public policy we identify is the one against fraud . . . ." (Citation omitted.)

In the case before us, the defendant asserts that "[a] general public policy against theft or fraud, without more" is not sufficient to warrant a vacatur under the narrow public policy exception. The defendant relies principally on *United Paperworkers International Union* v. *Misco, Inc.*, 484 U.S. 29, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987); *New Haven* v. *AFSCME, Council 15, Local 530*, 208 Conn. 411, 544 A.2d 186 (1988); and *Stamford* v. *Stamford Police Assn.*, 14 Conn. App. 257, 540 A.2d 400 (1988). Those cases are distinguishable from the case before us.

In *United Paperworkers International Union* v. *Misco, Inc.*, supra, 484 U.S. 44–45, the United States Supreme Court ruled that the trial court had engaged in improper fact finding by concluding that the grievant had violated his employer's rule against possessing or using controlled substances on the employer's property, even though the arbitrator had found that no violation had been proven. There was, therefore, no factual basis to support the trial court's conclusion that reinstatement would violate what the court declared was the public policy against a person's operating hazardous machinery while under the influence of drugs. The *United Paperworkers International Union* court further noted that the announced public policy, while

---

[5] The defendant argues that *Schmidt* v. *Yardney Electric Corp.*, supra, 4 Conn. App. 69, is inapposite because it does not involve arbitration. The defendant cites no authority for the proposition that public policy, as established in legal precedents, cannot be applied to this case unless that precedent addressed an arbitration award. We discern no rational reason to so limit legal precedents as a source of public policy.

"firmly rooted in common sense," did not stem from a review and analysis of existing laws and legal precedents and was, for that reason, improper. Id., 44. The United States Supreme Court reversed the Court of Appeals, which had affirmed the trial court's vacatur of the award. Id., 45. In contrast, our conclusion is based on an admission of fraud and theft and a review of our laws and precedents.

In *New Haven* v. *AFSCME, Council 15, Local 530,* supra, 208 Conn. 413, a police officer's criminal conviction was reversed on appeal. An arbitration award ordered the city to pay the officer lost wages and benefits for the period between his discharge and his reinstatement after the reversal. Our Supreme Court held that the award did not violate public policy because the city had chosen to rely on the conviction as a basis for discharging the officer rather than conducting its own hearings. Id., 419. The city was not being forced to rehire an officer convicted of a crime, as there was no longer a conviction, nor did the city find any improper conduct. Id. This is completely unlike the present case, where the conviction on which the plaintiff based the demotion of the grievant has not been reversed.

We held in *Stamford* v. *Stamford Police Assn.*, supra, 14 Conn. App. 260, that an arbitration award that enforced a collective bargaining provision that provided unlimited sick leave for police officers did not violate the public policy requiring the city to protect the public through its police department. Although the provision prohibited the city from terminating and replacing a disabled police officer who was on sick leave status, the city's concern did "not rise to the level of a violation of public policy"; id., 260; because it did not undermine or affect the city's responsibility for protecting the public. Under the circumstances of the case before us, rewarding a convicted felon with reinstatement would undermine the clear public policy against fraud and theft.

The defendant also asserts that vacatur is inappropriate under the circumstances here because, unlike the grievant in *State* v. *Council 4, AFSCME,* supra, 27 Conn. App. 635, the grievant in this case did not steal from his employer. In addition, the defendant asserts that the plaintiff had no specific regulation governing criminal activity by employees that was not related to their employment. We find no merit in these contentions.

In determining whether reinstatement of the grievant to a position where he would have custody and control of public property clearly violates public policy, we see no reason to differentiate between one who steals from his employer and one who steals from some other person or entity. The evidence shows that the warehouse supervisor is referred to as a "storekeeper" and that over $500,000 in merchandise is received in the warehouse each fiscal year. Reinstatement would literally mean putting an admitted thief in charge of the store. Our strong and clearly stated public policy against fraud does not countenance such a result.

The judgment is reversed and the case is remanded with direction to render judgment vacating the arbitration award.

In this opinion the other judges concurred.