MICHAEL ALMEIDA *v.* LIBERTY MUTUAL
INSURANCE COMPANY

LIBERTY MUTUAL INSURANCE COMPANY *v.*
MICHAEL ALMEIDA
(14955)

CALLAHAN, BORDEN, NORCOTT, KATZ and PALMER, Js.

Argued March 23—decision released August 8, 1995

*John K. McDonald*, for the appellant (Liberty Mutual
Insurance Company).

*Daniel D. Skuret*, with whom, on the brief, was *Daniel D. Skuret III*, law clerk, for the appellee (Michael Almeida).

NORCOTT, J. The principal issue in this appeal is whether the trial court properly granted an application to vacate an arbitration award. Michael Almeida, the plaintiff in the first case and the defendant in the second case (plaintiff), was injured in a motor vehicle accident and subsequently filed a claim for underinsured motorists benefits with Liberty Mutual Insurance Company, the defendant in the first case and the plaintiff in the second case (defendant). The defendant denied coverage and the parties submitted the claim to compulsory arbitration. The arbitration panel found for the defendant. The plaintiff filed an application to vacate the arbitration award and the defendant filed an application to confirm the award. The trial court vacated the arbitration award and the defendant appealed from the judgment of the trial court to the Appellate Court. We transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c), and we reverse the judgment of the trial court.

The following undisputed facts are relevant to this appeal. On September 11, 1987, at approximately 12:43 a.m., on Rubber Avenue in Naugatuck, the plaintiff was seriously injured when he was struck by an insured vehicle driven by Arthur D. Vernon. Vernon was intoxicated, speeding and driving without the aid of headlights. The plaintiff collected $20,000, the maximum coverage on Vernon's liability insurance policy, and then filed a claim with the defendant for underinsured motorist insurance benefits.

On the evening of the accident, the plaintiff had been driving a 1977 Chevrolet Blazer that was owned by Georgette Almeida, the plaintiff's stepmother, and insured by the defendant. The plaintiff contended that,

at the time of the accident, he had been "occupying"[1] the insured vehicle and thus was covered by his stepmother's policy. The defendant denied the plaintiff's claim that he was "occupying" the vehicle. Pursuant to the terms of the policy[2] and General Statutes § 38a-336 (c),[3] the plaintiff's claim was submitted to compulsory arbitration before a three member arbitration panel.

The specific facts of the accident were vigorously contested at the arbitration hearing. The plaintiff testified that the accident had occurred after he had crossed Rubber Avenue from north to south, and had reached the Blazer, which he claimed had been parked on the southern shoulder of the road. He testified that, as he had placed his hand on the door handle with his thumb on the depressor, his wife had called out to him to warn him of Vernon's vehicle, which was proceeding east on Rubber Avenue. The plaintiff further testified that, in

---

[1] The insurance policy issued to the plaintiff's stepmother defined "occupying" as "in, upon, getting in, on, out or off" of the insured vehicle.

[2] The policy provides in relevant part: "ARBITRATION

"A. If we and an insured do not agree:

"1. Whether that person is legally entitled to recover damages under this Part; or

"2. As to the amount of damages:

"either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request the selection be made by a judge of a court having jurisdiction.

"B. Each party will:

"1. Pay the expenses it incurs; and

"2. Bear the expenses of the third arbitrator equally. Unless both parties agree otherwise, arbitration will take place in the county in which the insured lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

"1. Whether the insured is legally entitled to recover damages; and

"2. The amount of damages. . . ."

[3] General Statutes § 38a-336 (c) provides in relevant part: "Each automobile liability insurance policy . . . which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding. . . ."

an effort to avoid being struck, he had turned away from the Blazer and had headed north, back across Rubber Avenue. At the time that he was struck by Vernon's vehicle, the plaintiff claimed to have been three or four feet away from the Blazer.

The defendant claimed that the plaintiff's testimony was not credible in that it contradicted the police report,[4] the testimony of the investigating police officer, Ken Butler, the plaintiff's prior assertions in his proof of loss statement[5] as to how the accident had occurred and the assertions in his complaint in court that he had filed against Vernon.[6] According to these statements, the plaintiff had not reached the Blazer prior to the accident, but had been walking south across Rubber Avenue toward the Blazer when he was struck by Vernon's vehicle. In addition, Butler testified that, at the time of impact, the plaintiff had been in the middle of the street and that the Blazer had not been parked on the street as the plaintiff had contended, but instead had been parked in a parking lot adjacent to the road.

---

[4] The police investigation report, signed by Butler as the investigating officer, provides in relevant part: "On the above time and date this officer and officer Nichols were dispatched to Dean's Restaurant on Rubber Ave. on the report of a motor vehicle/pedestrian accident. Upon arrival we found Mr. Almeida lying face down on Rubber Ave. . . . Mr. Almeida's wife stated that she and Mr. Almeida were crossing the street from Dean's Restaurant to the parking lot, in the crosswalk, when Michael was struck by the truck. . . ."

[5] In his September 30, 1988 proof of loss claim, the plaintiff described the accident as follows: "I was walking across Rubber Avenue in a southerly direction when struck by a motor vehicle operated by Arthur D. Vernon who was proceeding in an easterly direction on Rubber Avenue." The plaintiff verified the truth of the information contained in this form.

[6] The plaintiff's complaint alleged in relevant part that "[a]t said time and place, the plaintiff, MICHAEL ALMEIDA, was walking across said Rubber Avenue, Naugatuck, Connecticut, in a southerly direction, when he was struck by the defendant, ARTHUR D. VERNON'S truck and thrown into the air and forcibly to the ground sustaining personal injuries and consequential loss as hereinafter set forth."

On December 17, 1992, the panel issued its unanimous decision denying the plaintiff's claim. The panel's decision provided in relevant part: "The Claimant's testimony was that he had crossed from north to south to the Blazer parked east on Rubber Avenue and had placed his hand on the door handle with his thumb on the depressor getting ready to open the door when, having heard his wife call out to him, he became aware of the Vernon vehicle driving east on Rubber Avenue. In response, he turned away from the Blazer and to his right in the direction of the oncoming truck and headed back across Rubber Avenue in a northerly direction when struck at a point he testified was three to four feet from the Blazer in the eastbound lane of travel.

"The Plaintiff's testimony established he was not, at the time of impact 'in' the vehicle, 'getting in' the vehicle, 'getting on' the vehicle, 'getting out' of the vehicle, or 'getting off' the vehicle since his back was then turned toward the Blazer—which he had not ever entered—and was three to four feet away from it. The Connecticut Supreme Court has concluded the word 'upon' cannot be expanded so as to eliminate the necessity of physical contact with the insured vehicle. *Testone* v. *Allstate Ins. Co.*, 165 Conn. 126, 133–34, [328 A.2d 686] (1973). Absent physical contact with the vehicle, 'it cannot be said that he was "upon" that vehicle.' Id., 134. Prior intent to enter a vehicle is not 'entering' a vehicle within [the] policy meaning. Id. That conclusion is made more inescapable here where the Claimant is struck *(accepting the Claimant's version of events as true)* at a point in time when he no longer intended to enter the vehicle but was in fact moving away from it. *Testone* makes clear the Claimant's status as pedestrian or occupant is determined at the time of impact. Id. The policy definition of 'occupying' establishes the Claimant was not an occupant of the Blazer when struck. "The arbitrators are unanimous in finding there can be no recovery." (Emphasis added.)

The plaintiff filed an application in the trial court to vacate the award, claiming that the arbitrators "imperfectly executed their powers," "misconstrued and misapplied the law," and "made legal rulings predicated on factual findings which are contrary to the evidence submitted." The defendant, in a separate action, filed a motion to confirm the award stating that "the [f]inding of the arbitrators conforms to the submission, is in compliance with the law, and is based on substantial evidence." The two actions subsequently were consolidated.

The trial court granted the plaintiff's application to vacate the arbitration award pursuant to General Statutes § 52-418.[7] In its decision, the trial court stated: "Accepting that version of events put forth by the arbitrators, the plaintiff reached his vehicle and placed his left hand on the door handle with his thumb on the door handle button and was about to open the door to that motor vehicle when his wife alerted him to the

[7] General Statutes § 52-418 provides: "VACATING AWARD. (a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

"(b) If an award is vacated and the time within which the award is required to be rendered has not expired, the court or judge may direct a rehearing by the arbitrators.

"(c) Any party filing an application pursuant to subsection (a) of this section concerning an arbitration award issued by the State Board of Mediation and Arbitration shall notify said board and the attorney general, in writing, of such filing within five days of the date of filing."

oncoming Vernon vehicle." On the basis of this factual predicate, the trial court concluded that the panel improperly had required actual physical contact with the vehicle under *Testone* v. *Allstate Ins. Co.*, supra, 165 Conn. 126. The trial court determined that under certain emergency circumstances, "physical contact may not be required to satisfy a policy's definition of 'occupying'. . . ." See *Katz* v. *Ocean Accident & Guarantee Corp. Ltd.*, 202 Misc. 745, 112 N.Y.S.2d 737 (1952). The trial court stated that it would be "bizarre and illogical to deny coverage to this plaintiff who attempted to avoid injury while providing coverage to an individual who makes no such effort to avoid injury." The trial court concluded that "under the facts *as found by the arbitrators*," the plaintiff was entitled to underinsured motorist benefits and, accordingly, granted the plaintiff's motion to vacate the arbitration award. (Emphasis added.)

Thereafter, the defendant moved to open the trial court's judgment on the basis of mutual mistake. As evidence, the defendant submitted an articulation, rendered after the trial court's decision, by two of the three members of the arbitration panel. In their articulation, the arbitrators stated that they had not credited the testimony of the plaintiff.[8] The trial court denied the defendant's motion to open, stating that "nowhere in the arbitrator's finding does it indicate that the arbitra-

---

[8] This articulation, dated April 26, 1994, provided that "the majority of the arbitrators did not find credible that portion of the Claimant's testimony that he had placed his hand . . . to open the door when, having heard his wife call out to him" and that "the arbitrators' use of the language 'accepting the Claimant's version of events as true' represented the unanimous finding that, even if the Claimant's testimony [were] credible—which the majority found it was not, the Claimant could not recover under *Testone* v. *Allstate Ins. Co.*, [supra, 165 Conn. 133–34], for the reasons stated in the Finding dated December 17, 1992."

The parties offer no explanation as to why this articulation was not signed by the third arbitrator.

tors discredited the claimant's version of events." Further, the trial court stated that the attempted articulation by the arbitration panel was signed by only two of the arbitrators and therefore violated § 38a-336 (c), which requires that "the arbitration proceeding shall be conducted . . . by a panel of three arbitrators . . . ."

On appeal, the defendant claims that the trial court improperly granted the plaintiff's motion to vacate the arbitrators' award on the basis of the trial court's erroneous interpretation of the award as a finding that the arbitrators had credited the plaintiff's version of events. The defendant claims that there was substantial evidence in the record to support the arbitrators' award and, therefore, that the trial court should have granted the defendant's motion to confirm the award. We agree.

A party not satisfied with a compulsory arbitration award may move to vacate the award pursuant to § 52-418. See footnote 7. "It is the established policy of the courts to regard awards with liberality." (Internal quotation marks omitted.) *Costello Construction Corp.* v. *Teamsters Local 559*, 167 Conn. 315, 320, 355 A.2d 279 (1974). "Every reasonable presumption and intendment will be made in favor of an award of arbitrators and of their acts and proceedings." *Ramos Iron Works, Inc.* v. *Franklin Construction Co.*, 174 Conn. 583, 590, 392 A.2d 461 (1978); *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, 203 Conn. 133, 145, 523 A.2d 1271 (1987). "Hence, the burden rests on the party attacking the award to produce evidence sufficient to invalidate or avoid it." *Von Langendorff* v. *Riordan*, 147 Conn. 524, 527, 163 A.2d 100 (1960). Thus, a reviewing court must uphold an arbitration award unless it determines that the factual findings of the arbitrators are not supported by substantial

evidence[9] in the record. *Rydingsword* v. *Liberty Mutual Ins. Co.*, 224 Conn. 8, 21, 615 A.2d 1032 (1992); *Chmielewski* v. *Aetna Casualty & Surety Co.*, 218 Conn. 646, 660–61, 591 A.2d 101 (1991); *Allstate Ins. Co.* v. *Howe*, 31 Conn. App. 132, 135–36, 623 A.2d 1031 (1993). In cases where the arbitrators do not explicitly state findings, which they are not required to do, a reviewing court must search the record to determine whether there is substantial evidence to support the award. See *Chmielewski* v. *Aetna Casualty & Surety Co.*, supra, 667.

In reviewing the arbitrators' award, the trial court "[accepted] that version of events put forth by the arbitrators." We conclude, however, that the award made no findings of fact, but merely recited testimony. "[T]he statement of what a witness testified to is not, in that form, even a statement of an evidential fact." *Cutler* v. *MacDonald*, 174 Conn. 606, 614, 392 A.2d 476 (1978). The arbitration award simply recounted the plaintiff's testimony, as evidenced by its use of such phrases as "the Claimant's testimony was." Such recitations of testimony are not findings. *C.I.T. Corp.* v. *Cohen*, 117 Conn. 159, 161, 167 A. 102 (1933).

The only portion of the arbitration award that even arguably could be considered a finding of fact is the statement in the arbitrators' decision that the decision "is made more inescapable here where the Claimant is struck (*accepting the Claimant's version of events as true*) at a point in time when he no longer intended to

_____

[9] " 'Substantial evidence' will be found to exist if the . . . record supplies a substantial basis of fact from which the court reasonably can infer the fact in issue." *Chmielewski* v. *Aetna Casualty & Surety Co.*, 218 Conn. 646, 660–61 n.15, 591 A.2d 101 (1991). "The fact that a possibility exists that two inconsistent conclusions may be drawn from the evidence does not prevent the arbitrators' finding from being supported by substantial evidence." *Allstate Ins. Co.* v. *Howe*, 31 Conn. App. 132, 135–36, 623 A.2d 1031 (1993).

enter the vehicle but was in fact moving away from it."
(Emphasis added.) The practice of accepting facts as
true for the purposes of argument, however, does not
transform those facts into findings by the arbitration
panel. See, e.g., *Quimby* v. *Kimberly Clark Corp.*, 28
Conn. App. 660, 664, 613 A.2d 838 (1992) (construing
similar language in context of motion to strike); *Whitely*
v. *Sebas*, Superior Court, judicial district of Ansonia-
Milford, Docket No. CV90031783S (August 20, 1990)
("[t]he practice of accepting well pleaded facts in the
complaint as true for purposes of a motion to strike
does not transform those facts into admissions"). We
determine that, although inartfully stated, the language
of the award demonstrates that the arbitrators
accepted the plaintiff's version of the facts as true for
purposes of argument only. In other words, the arbitra-
tors construed the facts in a manner most favorable
to the plaintiff to demonstrate that, *even if* the plain-
tiff's version were credible, the plaintiff still could not
prevail on his underlying claim. The wording of the
arbitrators' decision does not transform such state-
ments into findings of fact.

Accordingly, we conclude that the arbitrators did not
make any findings of fact and, therefore, that the trial
court lacked the factual basis on which to decide
whether the arbitration panel had improperly ignored
the existence of an emergency exception to *Testone*.
Normally, in a case such as this, we would remand to
the trial court with instructions to conduct a new review
of the arbitration award. "Nonetheless, because the
administrative record before us on appeal is identical
to that which was before the trial court, the interests
of judicial economy would not be served by a remand
in this case." *Connecticut Light & Power Co.* v. *Dept.
of Public Utility Control*, 216 Conn. 627, 639, 583 A.2d
906 (1990). We therefore review whether there was sub-
stantial evidence in the record to support the arbitra-
tors' award.

On the basis of the record before them, the arbitrators reasonably could have found that the plaintiff was not in the process of getting into his vehicle before he was struck. The defendant introduced into evidence the plaintiff's proof of loss statement; see footnote 5; the plaintiff's complaint filed against Vernon; see footnote 6; as well as a statement from his stepmother, the owner of the car.[10] All of these documents support the defendant's version of events, namely, that prior to the accident, the plaintiff was a pedestrian, walking across Rubber Avenue toward his vehicle. This rendition is also supported by the police report; see footnote 4; and the testimony of Butler, the investigating officer at the scene. In the police report, Butler stated that "Mr. Almeida's wife stated that she and Mr. Almeida were crossing the street from Dean's Restaurant to the parking lot, in the crosswalk, when Michael was struck by the truck. . . ." In addition, Butler testified that he was familiar with the Blazer and that it was not parked on the street as the plaintiff had contended, but instead was parked in the parking lot adjacent to the road. Therefore, on the basis of our independent review of the record, we conclude that there is substantial evidence in this record to support the arbitrators' award. See *Chmielewski* v. *Aetna Casualty & Surety Co.*, supra, 218 Conn. 660–61 n.15. Consequently, we need not reach the question of whether physical contact with the insured vehicle at the time of impact is required, as we articulated in *Testone* v. *Allstate Ins. Co.*, supra, 165 Conn. 133–34, or whether it may be excused in emergency circumstances for purposes of underinsured motorist coverage.[11]

---

[10] Indeed, the plaintiff's stepmother described the accident as follows: "He was walking . . . toward the car, crossing the street. I believe the drive was . . . as so . . . the truck . . . I think Jeanne was . . . I don't remember if she went across the street . . . afterwards. Michael turned to say something to her or to check on her or something like that and the truck came out of . . . what seemed like . . . nowhere."

[11] Because the articulation, if it were valid, would only support the validity of the award, and because, in the absence of any findings by the arbitra-

The judgment is reversed, and the case is remanded with direction to render judgment confirming the arbitrators' award.

In this opinion the other justices concurred.

---

tors supporting the conclusion that the plaintiff was faced with an "emergency" situation, we conclude that the trial court improperly vacated the arbitration award, we need not address whether a trial court may open a judgment to consider a subsequent articulation by an arbitration panel or whether the articulation was valid notwithstanding the fact that it had been signed by only two of the three arbitrators.