[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PLAINTIFF'S APPLICATION TO VACATE ARBITRATION AWARD #101
The plaintiff, the city of Waterbury, filed an application to vacate an arbitration award on June 16, 1999. The plaintiff's application sets forth the following grounds: (1) "[t]he arbitrators exceeded their powers or so imperfectly executed them . . . that a mutual, final and definite award upon the subject matter was not made;" (2) "[t]he arbitrators are guilty of misconduct by which the rights of the city have been prejudiced;" and (3) "[t]he award violates public policy." The defendant, Local 353, filed a memorandum of law in opposition to the plaintiff's application to vacate and a cross application to confirm the arbitration award on October 13, 1999. The court will address each of the plaintiff's grounds.
"On October 1, 1991, tools belonging to Michael Fontano [grievant] were stolen from the city of Waterbury's central vehicle maintenance facility. The grievant filed a grievance with the city's personnel director who denied the grievance." (Arbitration Award.) A hearing officer's letter, dated October 2, 1996, stated: "Union's grievance is barred by time. Also, the contract does not prescribe any remedy should tools belonging to employees be stolen. Further, at the hearing no proof of theft was offered except a police complaint/report to the effect that tools were stolen. Union grievance is dismissed in limine." (Plaintiff's Exhibit D.) "On October 14, 1998, the matter was heard before the arbitration panel." (Arbitration Award.) The panel issued an award on May 14, 1999. The arbitration panel "determined that the matter [was] arbitrable because the grievance was properly filed and it was in the pipeline for several years and never properly addressed although the union inquired several times as to whether or not the city had made a determination." (Arbitration Award.) The arbitration panel found that the city mediated the grievance, but "did not deny the grievance until a much later date when the question of arbitrability was raised for the first time." (Arbitration Award.) The arbitration panel also found that this decision was not rendered "until after a second city attorney, who replaced a previous city attorney, reviewed the matter." (Arbitration Award.) CT Page 2618
The parties submitted the following questions for arbitration: (1) "Is the grievance arbitrable;" (2) "If so, did the city violate the agreement when it refused to reimburse the grievant for tools that he reported stolen from the city's central vehicle maintenance facility;" and (3) "If so, what shall the remedy be?" (Plaintiff's Exhibit A.)
The Supreme Court "has for many years wholeheartedly endorsed arbitration as an effective alternative method of settling disputes intended to avoid the formalities, delay, expense and vexation of ordinary litigation. . . . When arbitration is created by contract, we recognize that its autonomy can only be preserved by minimal judicial intervention. . . . Because the parties themselves, by virtue of the submission, frame the issues to be resolved and define the scope of the arbitrator's powers, the parties are generally bound by the resulting award . . . Since the parties consent to arbitration, and have full control over the issues to be arbitrated, a court will make every reasonable presumption in favor of the arbitration award and the arbitrator's acts and proceedings. . . . The party challenging the award bears the burden of producing evidence sufficient to invalidate or avoid it, and only upon a showing that it falls within the proscriptions of § 52-418 of the General Statutes,[1] or procedurally violates the parties' agreement will the determination of an arbitrator be subject to judicial inquiry." (Citations omitted; internal quotation marks omitted.)0 G/O'Connell Joint Venture v. Chase Family Ltd. PartnershipNo. 3, 203 Conn. 133, 145-46, 523 A.2d 1271 (1987).
The plaintiff argues that the arbitrators exceeded their authority because the grievance was untimely. The plaintiff cites an Appellate Court case, East Hartford v. East Hartford MunicipalEmployees Union, Inc., 10 Conn. App. 611, 525 A.2d 112 (1987), for its argument that a court may substitute its judgment for that of the arbitrator on the issue of timeliness. This decision, however, was reversed by the Supreme Court. East Hartford v. EastHartford Municipal Employees Union, Inc., 206 Conn. 643,539 A.2d 125 (1988). The Supreme Court held, "a trial court may not substitute its own finding of untimeliness for the arbitrators' finding of timeliness when, as part of an unlimited submission to arbitration, the parties have contractually empowered the arbitrators to decide the question of arbitrability." Id., 656-57. CT Page 2619
The parties submitted the issue of arbitrability to the arbitration panel. The parties specifically asked the arbitration panel to decide whether the grievance is arbitrable. (Plaintiff's Exhibit A.) The collective bargaining agreement states, "[t]he decision of the Arbitrator, or of the Arbitration Panel . . . shall be final and binding on both parties." (Plaintiff's Exhibit B, p. 64). This court will not disturb the finding of the arbitration panel on the ground that the panel exceeded its authority by finding the grievance was untimely.
The plaintiff argues that the award issued by the arbitrators is inconsistent with the underlying collective bargaining agreement. The plaintiff argues that, because the agreement does not provide a remedy for a city employee whose personal belongings are stolen from city property, the decision of the arbitration panel exceeds the authority granted to them in that they were limited to the interpretation and application of the provisions of the agreement and had no authority to add to, or subtract from, the agreement. The plaintiff argues that by issuing an award requiring the city to reimburse the grievant for his stolen tools, the arbitration panel implied such a provision and therefore added to or modified the agreement, in excess of their authority.
The defendant argues that the award is consistent with the collective bargaining agreement. Further, the defendant argues, a disagreement with the panel's interpretation of the collective bargaining agreement is not a proper ground for a motion to vacate.
"In deciding whether an arbitrator has exceeded his power, we need only examine the submission and the award to determine whether the award conforms to the submission." Bic Pen Corp. v.Local No. 134, 183 Conn. 579, 584, 440 A.2d 774 (1981). "[A] challenge of the arbitrator's authority is limited to a comparison of the award to the submission . . . ." (Internal quotation marks omitted.) Daley v. Hartford, 215 Conn. 14, 24,574 A.2d 194 (1990). "The arbitrator's authority is not measured or limited by previous grievances, prior discussions between the parties, or contract interpretation or language." Bic Pen Corp.v. Local 134, supra, 183 Conn. 584. "Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement was erroneous." (Internal CT Page 2620 quotation marks omitted.) Stratford International Assn. ofFirefighters, AFL-CIO, Local 998, 248 Conn. 108, 115,728 A.2d 1063 (1999).
The arbitration panel determined that the city violated the collective bargaining agreement when it refused to reimburse the grievant for tools that he reported stolen from the city's central vehicle maintenance facility. The plaintiff is asking this court to vacate the arbitration award because, the plaintiff argues, the arbitration panel erroneously interpreted the collective bargaining agreement. Our Supreme Court has held, however, that "an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement was erroneous." Id.
The plaintiff also argues that it presented extensive evidence that all similar claims had been denied in the past. Courts, however, "will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved." Id. "It is the established policy of the courts to regard awards with liberality. . . . Every reasonable presumption and intendment will be made in favor of an award of arbitrators and of their acts and proceedings. . . . Hence, the burden rests on the party attacking the award to produce evidence sufficient to invalidate or avoid it." (Citations omitted; internal quotation marks omitted.) Almeida v.Liberty Mutual Ins. Co., 234 Conn. 817, 824, 663 A.2d 382 (1995).
The plaintiff also argues that the arbitration panel cites no provisions of the agreement in support of its decision. The Supreme Court, however, has held that "[t]he arbitrator is only required to render an award in conformity to the submission and an award need not contain an explanation of the means by which he reached the award." Bic Pen Corp. v. Local No. 134, supra,183 Conn. 585. "[A]n award need contain no more than the actual decision of the arbitrators. An explanation of the means by which they reached the award, unless required by the submission, is needless and superfluous." Malecki v. Burnham, 181 Conn. 211,213, 435 A.2d 13 (1980); Fraulo v. Gabelli, 37 Conn. App. 708,719, 657 A.2d 704 (1995), cert. denied, 239 Conn. 947,686 A.2d 125 (1996). "As it stands the award is a definite answer to the claims as submitted . . . ." Gary Excavating Co. v. North Haven,160 Conn. 411, 414, 279 A.2d 543 (1971). The court will not disturb the award on the ground that the arbitration panel exceeded its authority by finding a violation of the collective CT Page 2621 bargaining agreement.
The plaintiff argues that the award violates public policy because it imposes an obligation upon the city from which it is statutorily immunized. The plaintiff cites to General Statutes § 52-557n (a)(2)(A)[2] and General Statutes § 52-557n
(b)(6),[3] arguing that these statutes provide that a municipality shall not be liable for damages to property by the criminal conduct or wilful misconduct of employees or third persons.
The defendant argues that, through a collective bargaining agreement, a municipality may promise to reimburse for the value of items stolen from municipal property. The defendant argues, more specifically, that an employee may recover under article XIII, § 2 of the collective bargaining agreement. That section provides, in pertinent part: "this Agreement shall not be construed as abridging any rights, benefits or privileges, based on historical practice, that employees have enjoyed heretofore; which rights, benefits or privileges are not specifically mentioned in this Agreement." (Plaintiff's Exhibit B, p. 68.) The defendant argues that the award in question does not violate public policy because there is nothing in § 52-557n that prevents a municipality from obligating itself to reimburse for stolen tools "through its past practice and/or through the CPA."
"[T]he public policy exception [to arbitral awards] applies only when the award is clearly illegal or clearly violative of a strong public policy." (Internal quotation marks omitted.)Stratford v. International Assn. of Firefighters, AFL-CIO, Local998, supra, 248 Conn. 126. "When a challenge to the arbitrator's authority is made on public policy grounds, however, the court is not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award." (Internal quotation marks omitted.) Id. "[T]he public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's interpretation . . . is limited to situations where the contract as interpreted would violate some explicit public policy that is defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." (Internal quotation marks omitted.) Id. "Parties cannot expect an intervening arbitral award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them." (Internal quotation marks CT Page 2622 omitted.) Perkins Mario, P.C. v. Annunziata, 45 Conn. App. 237,240-41, 694 A.2d 1388 (1997).
"Not every violation of public policy qualifies as a ground to vacate an arbitration. For example, in Watertown [Police UnionLocal 541, AFSCME, AFL-CIO, v. Watertown, supra, 210 Conn. 340], a police officer alleged that he had been directed by superiors not to enforce certain motor vehicle laws, in contravention of a claimed public policy requiring police officers to enforce all state laws. When he failed to comply with the directive of his superior, he was disciplined. His grievance was the subject of an arbitration before the State Board of Mediation and Arbitration which ruled that, public policy aside, the officer could be disciplined for insubordination. The Supreme Court agreed, holding that the public policy involved was insufficiently explicit to permit the court to vacate an arbitration under the public policy exception. In Stamford v. Stamford PoliceAssociation, 14 Conn. App. 257[, 540 A.2d 400] (1988), an award enforcing a contract provision entitling union members to unlimited sick leave was held not to so compromise public safety as to violate a specific public policy." Madison v. InternationalBrotherhood of Police Officers, Local 456, Superior Court, judicial district of New Haven at New Haven, Docket No. 404355 (January 13, 1999, Pittman, J.) (23 Conn. L. Rptr. 661, 662). In a recent case, our Supreme Court "acknowledge[d] that the doctrine of collateral estoppel is enforced on public policy grounds . . . Nevertheless, in light of the strong public policy favoring arbitration as an alternative method of dispute resolution and [the court's] desire to maintain the flexibility of the process and to remain true to its contractual nature, [the court] conclude[d] that the public policy favoring application of the doctrine of collateral estoppel must yield." (Citation omitted.) Stratford v. International Assn. of Firefighters,AFL-CIO, Local 998, 248 Conn. 108, 127-28, ___ A.2d ___ (1999).
Our courts have, however, vacated arbitration awards on the grounds that they violated public policy. Our Appellate Court held that handling a personal injury matter on a contingent fee arrangement without a written fee agreement is against public policy "and, as such, the award should have been vacated by the trial court." Perkins Mario, P.C. v. Annunziata,45 Conn. App. 237, 242, 694 A.2d 1388 (1997). Similarly, the Appellate Court directed a judgment vacating an arbitration award on public policy grounds where the award reinstated an employee who was convicted in federal court of fraudulently negotiating checks to CT Page 2623 obtain $23,852 in union funds to which he was not entitled. Boardof Education v. Local 566, Council 4, AFSCME, 43 Conn. App. 499,507, 683 A.2d 1036 (1996). In South Windsor v. South WindsorPolice Union, 41 Conn. App. 649, 677 A.2d 464 (1996), the plaintiff town dismissed a police officer who had deliberately disclosed the name of a confidential police informant. The Appellate Court affirmed a trial court decision to vacate the award of the state board of mediation and arbitration, which had reinstated the officer after only a suspension. The court treated the intentional disclosure by the officer as serious misconduct and held that the officer's reinstatement violated the explicit public policy, expressed in statutes and case law, of protecting confidential informants. See id., 654-59.
The Appellate Court also confronted a public policy issue in the context of a motion to vacate an arbitral award in Hartfordv. International Assn. of Firefighters, Local 760,49 Conn. App. 805, 717 A.2d 258 (1998). There, the court held that the trial court properly vacated an arbitrator's award of punitive damages against the city of Hartford. See id., 817. "[I]t is now firmly established that exemplary or punitive damages are not recoverable unless expressly authorized by statute or through statutory construction. . . . In denying punitive or exemplary damages, most courts have reasoned that while the public is benefitted [benefited] by the exaction of such damages against a malicious, willful or reckless wrongdoer, the benefit does not follow when the public itself is penalized for the acts of its agents over which it is able to exercise but little direct control." (Internal quotation marks omitted.) Id., 817-18.
General Statutes § 52-557n (a)(2)(A) applies "except asotherwise provided by law." Thus, the enforcement of a valid collective bargaining agreement is not impaired by General Statutes § 52-557n (a)(2)(A). General Statutes §52-557n (b)(6) "simply codif[ies] the common law, specifically the basic notion that municipal defendants are not liable for the acts of nonemployees or nonagents of the municipality." Elliottv. Waterbury, 245 Conn. 385, 408, 715 A.2d 27 (1998). The evidence provided does not establish whether or not the tool thief was an employee of the plaintiff. The arbitrators indicated only that "it was well-documented that the building had been broken into." (Arbitration award.) Therefore, the plaintiff has failed to demonstrate that the arbitrators' decision to hold it liable is clearly illegal pursuant to General Statutes §52-557n (b)(6). See Stratford v. International Assn. ofCT Page 2624Firefighters, AFL-CIO, Local 998, supra, 248 Conn. 126. Neither of the statutes cited provides that municipalities may not expose themselves to liability for the acts of employees and nonemployees through the negotiation of a collective bargaining agreement.
The arbitrators' decision does not "violate some explicit public policy that is defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests."Stratford v. International Assn. of Firefighters, AFL-CIO, Local998, supra, 248 Conn. 126. Unlike the variety of cases where awards were held to violate public policy, there is no firmly established policy against the use of collective bargaining agreements to define the liability of municipal employers. For instance, although there is a strongly established public policy against holding a municipality liable for punitive damages for acts beyond its control because such liability is authorized by statute only; see Hartford v. International Assn. ofFirefighters, Local 760, supra, 49 Conn. App. 817-18; there is no deeply rooted public policy against holding a municipality liable where the municipality bargained for exposure to certain liabilities through the negotiation of a collective bargaining agreement.
This court will confirm the award because it is possible that the plaintiff has a practice of reimbursing municipal employees for possessions stolen from municipal property. If the plaintiff has such an established practice, the Collective Bargaining Agreement provides, in article XIII, § 2, for the continuation of that practice. "It is the established policy of the courts to regard awards with liberality. . . . Every reasonable presumption and intendment will be made in favor of an award of arbitrators and of their acts and proceedings." (Citations omitted; internal quotation marks omitted.) Almeida v.Liberty Mutual Ins. Co., supra, 234 Conn. 824.
For the foregoing reasons, the plaintiff's motion to vacate is denied and the defendant's cross application to confirm the arbitration award is granted.
Thomas G. West, J.